IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| CHARLES EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 316-019 |
| ) | |
| MEDICAL DIRECTOR PAT CLARK, ) | |
| Wheeler Correctional Facility; VIRGINIA ) | |
| COTTLE, Dental Assistant, Wheeler ) | |
| Correctional Facility; and DR. JASMINE ) | |
| AHN, Dentist, ) | |
| ) | |
| Defendants. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

*Pro se* Plaintiff, a former inmate at Wheeler Correctional Facility ("WCF"), commenced this case alleging Defendant Clark retaliatorily transferred him for filing grievances and Defendants Cottle and Ahn refused to provide him with dentures. (Doc. no. 15.) Before the Court is Defendants' motion for summary judgment. (Doc. no. 66-1.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.

I. **FACTS REGARDING DENTURE CLAIM**

   A. **Medical Records and Grievance History**

The Georgia Department of Corrections ("GDOC") assigned Plaintiff to WCF from May 2012 through May 2015. (Doc. no. 66-1, p. 2, ¶ 1.) In May 2012, Dr. Mark Peacock,

former dentist at WCF, extracted Plaintiff's three remaining teeth and placed Plaintiff on the denture fitting list. (Edwards Decl., doc. no. 75, ¶ 6.) Three years later in May 2015, GDOC transferred Plaintiff from WCF to Washington State Prison ("WSP"). (Doc. no. 66-1, p. 2, ¶ 1.) Despite Plaintiff being on the denture fitting list for three years, there is no evidence the dental department at WCF made any effort to begin the denture process for Plaintiff. In contrast, Dr. Pinson, a dentist at WSP, evaluated Plaintiff for dentures on April 18, 2016, began the fitting process on May 19, 2016, and provided Plaintiff with dentures on August 25, 2016. (Doc. no. 75-1, pp. 22-53.)

The medical records confirm at least four occasions when Plaintiff complained about the delay in receiving dentures in 2014 and 2015. On March 10, 2014, he lodged an information request explaining he had been waiting on dentures since 2012, to which dental official Tara Veal responded he was number twenty-six on the denture waiting list. (Doc. no. 75-1, p. 4). On July 30, 2014, Plaintiff lodged a grievance complaining (1) Defendant Cottle, dental hygienist at WCF, had done nothing in response to his oral complaint on July 28, 2014 that he had been waiting since May 2012 for dentures; (2) he was "still having problems trying to eat and digest food with out [sic] dentures"; and (3) he had "lost weight." (Doc. 66-1, p. 21.) Warden Laughlin denied the grievance because Defendant Cottle denied the conversation took place and alleged she was not at work on the day in question. (Id. at 22.) Plaintiff appealed, explaining again he needed dentures due to his "lost [sic] of weight" and "inability to digest food properly." (Id. at 18.) Dental progress notes also show that, on April 15, 2015, Plaintiff complained his gums were sore and Tara Veal informed him he was

number eight on the waiting list. (Doc. no. 75-1, p. 5.)

### B. Plaintiff's Declaration

Plaintiff claims that, in addition to the written complaints described in the prison records, he complained orally on many other occasions about his need for dentures and the physical problems he suffered as a result of having no teeth. On November 21, 2013, Plaintiff claims he spoke with Defendant dentist Dr. Ahn about his need for dentures while picking up denture supplies. (Edwards Decl., ¶ 13; doc. no. 75-1, p. 6.) During a March 19, 2014 visit to the dental department, Plaintiff claims he told Dr. Ahn his gums were sore and swollen, he was losing weight, and he was suffering from heartburn as a result of his inability to eat properly. (Edwards Decl. ¶ 14; doc. no. 75-1, p. 5.) Dr. Ahn allegedly responded, "I'm not going to keep going back and forth with you about it . . . ." (Edwards Decl. ¶ 14.) On July 28, 2014, Plaintiff claims he asked Dental Hygenist Cottle to speak with Dr. Ahn about his long wait and informed her about his eating and digestion problems, but to no avail. (Id. ¶ 17.) Plaintiff was never placed on a soft diet profile, a common solution for inmates to eat meals while awaiting dentures. (Id. ¶ 22.)

With respect to damages, Plaintiff claims the delay in receiving dentures caused him to suffer swollen and sore gums, weight loss, heartburn, and jaw disfiguration. (Id. ¶¶ 14, 23, 25.) Plaintiff submitted dental records from WSP wherein Dr. Pinson stated Plaintiff's "jaw configuration will make it v. difficult to make dentures for him." (Doc. no. 75-1, pp. 22-24.) However, Dr. Pinson's notes do not touch on Plaintiff's allegation that, on April 18, 2016, Dr. Pinson informed Plaintiff that his "jaw had become disfigured as a result of being

without dentures from May 2012 up to August 25, 2016." (Edwards Decl., ¶ 25.)

### C. Defendants' Declarations

Dr. Ahn explained in her affidavit that any delay in a prisoner at WCF getting dental fittings was the result of there being only two dentists on staff who were too busy attending to more pressing dental needs. (Ahn Decl., doc. no. 66-1, Ex. D, ¶ 6.) Dr. Ahn does not recall any discussion with Plaintiff about trouble eating, swollen gums, or sore jaws as a result of his lack of dentures. (Id. ¶¶ 5-6.) Dr. Ahn avers her standard practice for patients with eating difficulties was to order a soft diet profile; however, she does not state whether she did so for Plaintiff. (Id.)

Defendant Cottle, in her position as dental hygienist, primarily scheduled cleanings at the request of inmates. (Cottle Decl., doc. no. 66-1, Ex. B, ¶¶ 2, 4.) She did not have the authority to make decisions on what dental procedures an inmate needed, and she could not decide whether Plaintiff received dental extractions or dentures. (Id. ¶¶ 4-5, 8.) While she cannot recall whether Plaintiff was on the denture fitting wait list, she never delayed scheduling any of Plaintiff's dental procedures nor was she aware Plaintiff had an urgent dental need requiring immediate dentures. (Id. ¶¶ 4, 8.)

## II. FACTS REGARDING RETALIATORY TRANSFER CLAIM

Defendant Clark is the Health Services Administrator for WCF, and is familiar with medical record keeping at WCF. (Clark Decl., doc. no. 66-1, Ex. A, ¶¶ 2-3.) In May 2015, GDOC transferred Plaintiff from WCF to WSP as part of a larger transfer of chronic care patients out of WCF caused by WCF having too many chronic care patients. (Id. ¶¶ 6-7.)

4

On March 28, 2015, just two months before the chronic care transfer, an unidentified official at WCF assigned Plaintiff a diabetic medical profile. (Doc. no 75-1, p. 53.) The diabetic designation is the only medical designation shown on Plaintiff's profile. (Id.) There is no evidence to suggest Plaintiff is a diabetic aside from a chart showing WSP and Coffee Correctional Center continued the diabetic profile originating at WCF. (Id.)

Plaintiff claims he is not a diabetic, and he surmises Defendant Clark created the false diabetic profile so that Plaintiff would be flagged for the large chronic care transfer out of WCF. (Edwards Decl., ¶ 32-33, 35.) Plaintiff avers there is no other reason for him to be transferred as a chronic care prisoner. (Id. ¶ 33.)

Defendants counter that GDOC routinely assigns prisoners to and from WCF on a periodic basis. (Clark Decl., ¶ 6; Laughlin Decl., doc. no. 66-1, Ex. E, ¶ 3.) While medical staff suggests transfers of inmates requiring specialized care from time to time, neither Warden Laughlin nor any medical staff member, including Defendant Clark, has the authority to do so. (Clark Decl., ¶¶ 6-7; Laughlin Decl., ¶¶ 3, 5-6.) Defendant Clark further avers she never selected Plaintiff for transfer, personally recommended Plaintiff for transfer, or identified Plaintiff as a diabetic in his medical profile records. (Clark Decl., ¶ 7.) Indeed, Defendant Clark claims she never took any action against Plaintiff because he complained about not receiving dentures. (Id. ¶ 8.)

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross,

663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Plaintiff's Claims Are Not Barred by the Statute of Limitations Because the Continuing Violation Doctrine Applies.

Defendants Ahn and Cottle argue many of Plaintiff's claims in paragraphs 1, 2, 3, 4, 7, and 9 of his amended complaint are barred by the statute of limitations because they occurred two years before Plaintiff filed suit on March 28, 2016. (Doc. no. 66-1, pp. 6-7.) Defendants correctly state the statute of limitations for § 1983 cases in Georgia is two years. See Flowers v. Fulton Cty. Sch. Sys., 654 F. App'x 396, 401 (11th Cir. 2016) ("It is . . . well-settled that § 1983 claims filed in Georgia are governed by the same two-year statute of limitations for personal-injury actions.") (citing Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)).

However, the continuing violation doctrine allows a plaintiff to sue on a time-barred claim "when additional violations of the law occur within the statutory period." Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir. 2001). "'The critical distinction in the continuing violation analysis . . . is whether the plaintiff[ ] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that

7

violation into the present, which does.'" Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (quoting Knight v. Columbus, Ga., 19 F.3d 579, 580-81 (11th Cir.1994)). If a continuing violation is found, a plaintiff can recover for any violation for which the limitations period has not run. Knight, 19 F.3d at 581.

Here, Defendant Ahn's and Cottle's alleged refusal to treat Plaintiff's dental needs was ongoing and repeated. Although Plaintiff first requested dentures in May 2012, outside the two-year statute of limitations period, he continued to request dentures until his transfer from WCF in May 2015. Thus, Plaintiff does not complain of the consequences of a one-time denial of dentures; rather, he complains of continued and repeated denials and delays of dentures throughout the three-year period. See Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) ("[C]ontinuing to expose [Plaintiff] to the source of his scabies after he was diagnosed was a continuing violation of [Plaintiff]'s rights."). Accordingly, under the continuing violation doctrine, events occurring before March 28, 2014 are actionable.

### C. Defendant Cottle, But Not Defendant Ahn, Is Entitled to Summary Judgment on Plaintiff's Deliberate Indifference Claim.

#### 1. Standard for Deliberate Indifference to a Serious Medical Need

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment

8

claim, a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). Furthermore, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm[.]'" Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must show that person: (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

"Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours . . . ." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). A plaintiff alleging deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666

(2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners."). Whether such delay amounts to deliberate indifference to a serious medical need depends on the length of the delay as well as "the nature of the medical need and the reason for the delay." Farrow, 320 F.3d at 1247.

### 2. Plaintiff Has Established a Serious Medical Need.

Here, Plaintiff has established his need for dentures was a serious medical need. In Farrow v. West, the Eleventh Circuit found a serious need for dentures where a prisoner alleged the absence of dentures caused him to suffer "pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, weight loss, and such continuing medical problems." Id. at 1244-45; see also Newsome v. Prison Health Servs., Inc., No. CV405-042, 2009 WL 1469203, at *4-*6 (S.D. Ga. May 26, 2009) (finding serious medical need for dentures where plaintiff alleged absence of dentures caused severe pain, extreme headaches, earaches, and pain in throat, and loss of fifteen pounds).

Plaintiff's allegations fall within the scope of Farrow. Plaintiff complained to Defendants Ahn and Cottle of sore and swollen gums, pain, weight loss, and heart burn. (Edwards Decl. ¶¶ 14, 17.) Moreover, Plaintiff declares the lack of dentures for three years caused his jaw to become disfigured permanently. (Id. ¶ 23, 25-26; see also doc. no. 75-1, p. 22.) Such problems, verified by medical evidence in the record, are of the sort associated with a serious dental need. Farrow, 320 F.3d at 1243-45; Newsome, 2009 WL 1469203, at *4-*6.

### 3. There Is an Issue of Fact as to Whether Defendant Ahn Was Deliberately Indifferent to Plaintiff's Need for Dentures.

There is an issue of fact as to whether Defendant Ahn was deliberately indifferent to Plaintiff's need for dentures. Defendant Ahn acknowledged Plaintiff needed dentures by placing him on the denture waiting list. Moreover, Plaintiff alleges he repeatedly informed Defendant Ahn about his related problems with eating, digestion, pain, and weight loss. Thus, reasonable jurors could find Defendant Ahn knew Plaintiff was at risk of serious harm from his lack of dentures. See Farrow, 320 F.3d at 1246 ("[Plaintiff] repeatedly told Dr. West about his pain, weight loss, bleeding gums, and soft diet, and thus Dr. West knew of a serious risk of harm to [Plaintiff].").

Defendant Ahn argues she addressed Plaintiff's lack of dentures by placing him on a soft diet profile. (Doc. no. 66-1, pp. 10-11.) However, in her declaration, she merely stated a prisoner could request a soft diet and one typically would be ordered, not that Plaintiff was actually provided one. (Ahn Decl., ¶ 5.) Indeed, Defendant Ahn produces no evidence showing Plaintiff was ever given a soft diet profile, and Plaintiff avers he never was. As the Eleventh Circuit held in Farrow,

> While [Plaintiff]'s condition did not require immediate attention, his claim survives summary judgment given his recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay in this case.

Id. at 1247. Accordingly, Defendant Ahn is not entitled to summary judgment on Plaintiff's deliberate indifference claims.

### 4. Defendant Cottle Was Not Deliberately Indifferent to Plaintiff's Need for Dentures.

Based on the undisputed facts, Defendant Cottle was not deliberately indifferent to Plaintiff's need for dentures. As a dental hygienist, she could not decide whether Plaintiff received dental extractions or dentures or place Plaintiff on the denture fitting wait list. (Cottle Decl., ¶¶ 4-5, 8.) Thus, she could not provide Plaintiff with dentures. Plaintiff offers no evidence to the contrary. Accordingly, Defendant Cottle is entitled to summary judgment on Plaintiff's deliberate indifference claims.

### D. Defendant Clark Is Not Entitled to Summary Judgment on Plaintiff's Retaliatory Transfer Claim.

Plaintiff alleges Defendant Clark transferred him to WSP in retaliation for his complaints about lack of dental treatment. Prisoners do not have a constitutional right to remain at a particular penal institution. See Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986) ("prison inmates do not have a constitutionally protected right to remain at a particular penal institution"); Meachum v. Fano, 427 U.S. 215, 227, (1976) (transfer without hearing does not violate Constitution). However, "prison officials may not transfer, or otherwise punish, an inmate in retaliation for exercising his right to file grievances against prison officials." Nichols v. Riley, 141 F. App'x 868, 869 (11th Cir. 2005). Indeed, "such retaliatory transfers violate an inmate's First Amendment rights and his right of access to the courts." Id.

Defendant Clark asserts Defendant's transfer was merely the result of his status as a chronic care prisoner. (Id. ¶ 7.) However, Defendant Clark does not identify why Plaintiff

was labeled a chronic care patient. Indeed, despite arguing "Edwards was a chronic care patient for a long list of reasons other than diabetes," she fails to identify a single reason in her motion or declaration. (Doc. no. 66-1.) The fact remains Plaintiff was transferred less than two months after he received a diabetic profile, despite his claim he is not diabetic. (Edwards Decl., ¶ 35; doc. no. 75-1, p. 53.) Defendants submit no medical evidence to suggest he is a diabetic.

Defendant Clark and Vance Laughlin, Warden of WCF, maintain Defendant Clark did not order Plaintiff's transfer from WCF, nor did she participate in labeling Plaintiff a diabetic or ordering him a special diet. (Clark Decl., ¶¶ 6, 7; Laughlin Decl., ¶¶ 3, 5, 6.) However, she does not aver she did not know about Plaintiff's diabetic profile. Nor does she show that she did not direct someone else in the medical department to create the profile given the imminent transfer of chronic care patients. Given the timing and circumstances of Plaintiff's transfer, an issue of fact exists as to whether the diabetic profile and chronic care transfer were retaliatory and whether Defendant Clark was involved in the creation of the profile. Accordingly, Defendant Clark is not entitled to summary judgment on Plaintiff's retaliatory transfer claims.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion for summary judgment (doc. no. 66-1) be **GRANTED IN PART** and **DENIED IN**

**PART**.

SO REPORTED and RECOMMENDED this 22nd day of May, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA